Smith, J.
This case involves the construction of the will of Samuel B. Walker, late of Warren county, O., deceased, executed February 4, 1843, and admitted to probate shortly after his death, which took place December 6, 1845. The question to be considered is, what estate was given to Thomas D. Walker, one of the sons of the testator, in the lands devised to him under item 5 of the will, by the terms thereof ■ and *410 other provisions made by the testator in his will, and who are the present owners thereof. So far as it is necessary to state the provisions of the will,they are as follows: Item 2, directs his debts and funeral expenses to be paid, and his personal estate to be sold by his executors, after setting off to his wife certain specific articles. By item 5, he provides as follows: “To my son Thomas Walker I give and bequeath about 77 acres of land, (describing it, and certain articles of personal property mentioned therein), he to remain in possession of said premises and pay to his mother, my widow, one-third part of all proceeds of said premises, during her life”.
By substantially similar provisions, he gave to his sons, Jackson Walker, William Walker, George Walker, James Walker, and to his daughter Margaret J. Walker, each a tract of land, except that James and the daughter were not required to pay any part of the proceeds of their land to their mother during her life. Then follow certain provisions that some of the children to whom these devises of land were made, should at the expiration of five years from his death pay a sum named to his executors, and ten years later pay another sum to the executors. So far as Thomas was concerned it read thus:
“Item 12. And that my son Thomas at the same periods as in the last item pay to my executors three hundred and fifty-nine dollars, and three hundred and fifty-nine dollars more, making $718,00. ”
Item 14. provided that if the personal property should prove insufficient to pay his debts, then certain of his children to whom he had devised land, of whom Thomas was one, were to contribute and pay to bis executors the amount of the deficiency in proportion to the amounts directed by them to be paid before to the executors, which sums were to be a credit on the first payment required to be made, and all of the payments required to be made by Thomas were paid. And by item 15, he then provides as to the payment by the executors, (doubtless from the sums so to be paid to them .by the devisees), of certain pecuniary legacies to other children of the testator.
Item 16, provides as follows: “I further will and direct that in case any of my heirs aforesaid die without issue or *411 leave no surviving issue, that the bequest or bequests herein-before made shall pass to my other surviving heirs”.
Samuel B Walker died leaving all of his children surviving him. There were seven sons and two daughters. Thomas Walker died May 18, 1890, leaving no issue. Four of his brothers and his two sisters died before he did, viz. William, George, Samuel and James, and his two sisters Margaret and Mrs. Shields, all six of whom died leaving children surviving them. The original action was one for the partition of the real estate so devised to Thomas Walker, and was brought by the plaintiff, a grandson of Samuel Walker, son of the testator, his father Luther, one of 'the children of said Samuel, being dead. Two of the children of Samuel B. Walker the testator died after the death of Thomas D. Walker, viz. A. J. Walker, and John S. Walker. A. J. Walker died leaving children, and John S. died leaving no surviving issue.
Thomas D. Walker in his life time undertook to convey to others in fee simple a part of the land so devised to him by his father, and by his will undertook to devise the residue thereof in fee simple to his wife. A. J. Walker had contemplated to convey his interest in the land in question to others in fee simple, and John S. Walker, who was the survivor of all of his brothers and sisters, either conveyed or devised all of his interest therein in fee simple. All of the children and heirs at law, or devisees or grantees of the children-of Samuel D. Walker, the testator, are before the court, and the question, as has been said is, who are the owners of the said real estate.
It is urged by the counsel for the plaintiff in error, Mrs. Walker, the widow and devisee of Thomas D. Walker, that the devise of the land to her latp husband, was of a perfect fee simple title, and for these reasons: first, that the language of item 5 of the will of his father, if it stood alone, is sufficient to give an absolute title to the land, subject only to the payment to his mother of one-third of the proceeds thereof for her life, and such undoubtedly is the case; and that item 16, of the will,does not operate to limit such estate,for the reason that the true meaning and construction to be placed on the language used therein, that” in case any of my heirs'aforesaid die without issue; or leave no surviving issue, *412 that the bequest or bequests hereinbefore made shall pass to my other surviving heirs,” is this,that if such an heir should die without issue, or leave no surviving issue, in the life time of the testator, then it shall pass to his other surviving heirs.
But it seems to us entirely clear, that whatever may have been the adjudications as to this or similar provisions in wills by the English or other courts, sustaining this view, that it is not an open question in this state. That the decisions of the supreme court of this state in the cases of Parish’s Heirs v. Ferris, 6 Ohio St., 563; Niles v. Gray, 12 Ohio St., 320, and Piatt v. Sinton, 37 Ohio St., 354, distinctly hold that the claim made on behalf of the plaintiff in error, that ‘‘where real estate is devised in terms denoting an intention that the primary devisee shall take a fee simple on the death of the testator, followed by a devise over in case of his death without issue, the latter words refer to a death in the life time of the testator”, is not the law of this state, and that such words or words of similar import are to be interpreted according to their popular and natural meaning, and as referring to the time of the death of the first taker, unless the contrary intention is plainly expressed in the will,or is necessary to carry out its undoubted purposes.
Ths second reason urged by counsel for the plaintiff in error in support of the claim that looking at the whole will the intention of the testator appears to have been, that his son Thomas, and his other children to whom land was given, should have a fee simple title thereto, is this: that by the other provisions of the will, the burden was imposed upon them of making large payments of money to his executors, to be used in the payment of pecuniary legacies to certain of his children to whom land was not given, and for the payment of the debts of the testator. Thus, item 12 provides, in substance, that Thomas in five years after the death of the testator should pay to the executor of the will, the sum of $357,and a like sum seven years after his death, in all $714, and that if it be doubtful whether the estate devised to him was a fee, that this provision ought to be sufficient to solve the doubt and convince the court that it was the intention of the testator to give a fee simple title to the land so devised, subject only to the charges imposed upon him by the will in favor of the mother and of the executors of the will, on the *413 ground that it is unreasonable to suppose that a father desiring to benefit's son, would devise land to him by such a title as might, if he paid the burden imposed upon him by the will, be greatly injured instead of benefited. And great reliance is placed on the language used in 8 Jarman on Wills, 5 Am. from 4th London Ed., page 22, paragraph 2, as follows:
“It has long been settled that where a devisee whose estate is undefined, is directed to pay the testator’s debts or legacies,or a specific sum in gross, he takes an estate in fee, on the ground that if he took an estate for life only, he might be damnified by the determination of his interest before re-imbursement of his expenditure; and the fact that actual loss is rendered highly improbable by the disparity in the amount of the sum charged, relating to the value of the land, does not prevent the enlargement of the estate.’’
But we are of the opinion that this doctrine of the law is not pertinent or applicable to the case before us. There certainly are cases where the devise to the first taker is so undefinite that the intention of the testator as to what estate he may have sought to give him, can not be easily ascertained. In such cases, the court called upon to decide wüat estate was really devised, and to do. this by finding from the will itself, viewed in the light of the surrounding circumstances, so as that a burden of the kind indicated is laid upon the first taker, which, if shouldered by him, might be greatly to his prejudice,instead of being for his benefit,might in some cases consider it as strong evidence, or raising the presumption at least, that such was not the purpose of the testator, and that he intended to confer upon him the full title to the property. The difficulty, however, in the application of the rule in question to this case is, that in our opinion, the estate given by this will to Thomas D, Walker is not undefined. The will devises to the son by apt and appropriate language, an estate in fee in the land; but by a subsequent item-provides that if he shall die without issue, or leave no surviving issue, that it should pass to other persons, and such language standing by itself, as we have said has a distinct and definite meaning in our state.
The next question presented is this: On the death of Thomas D. Walker, in 1890, without issue, or leaving no *414 issue, to whom did the land so devised to him pass? The will says that in this event it should pass to the other surviving heirs. Who were they?
As hereinbefore stated, four brothers and two sisters of Thomas D. Walker died before him. All of these brothers and sisters left issue surviving him. Two brothers survived him. One of these died leaving issue surviving him, the other subsequently died 'leaving no issue surviving him. 'On the death of Thomas, did any part of his real estate devised to him by his father, pass to the children or heirs at law of the four brothers and two sisters who died before him, or did it all pass to the two brothers who survived him ? With reluctance we have come to the conclusion that the two brothers who survived took the estate. In this provision of the will, as in the others which have been under consideration, we have been required jco reach conclusions based on the language used by the testator, which it is very probable were never contemplated by him; but if language is used by a testator the plain and obvious meaning of which can not be questioned, it must have such construction, though the court called upon to act may be of the opinion that such could hardly have been the meaning of the testator, and that he may not have comprehended the true meaning of the words used. Thus it would seem most natural and reasonable, that in making a disposition of the estate which he had given to one of his children on his death leaving no issue, that he would have provided that it should pass to the surviving brothers and sisters and the children of those who had died before leaving children. But the language of item 16, which provides for such contingency, certainly does not do this expressly, nor as we think by implication. He says, “that in case any of my heirs aforesaid die without issue or leave no surviving issue,that the bequest or bequests herein-before made, should pass to my other surviving heirs. ’
The word “heirs” appears only in this section 16. All of the devises and bequests made by him in his will, [except as to the provision made for his wife), were to his children— his sons and his daughters. Evidently then, when he speaks in item 16 of “any of his heirs aforesaid dying without issue”, he refers to the children before named, to whom, he says, bequests had been made, and follows it with the provision *415 that if any of them “die without issue or leave no surviving issue”, then that such bequest to him “shall pass to my other surviving heirs”.
The 18th of Jarman’s General Rules of Construction, which are considered as of great authority, reads as follows: “That words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appears by context, or unless the words be applied to a different subject. And on the same principle, where a testator uses an additional word or phrase, it must be presumed to have an additional meaning”
The testator in this will having used in this item and where it first apears in the will, the word “heirs,” obviously in the sense of his children, his sons and daughters to whom he had made bequests or devises, it must be held that when he uses it again in the same item, and in relation to the same subject, he uses it in he same sense, and means children there, and when he says it shall pass to his “other surviving heirs”, he means his other surviving children. These were A. J. Walker and John S. Walker, and we hold that the real estate devised by the will to Thomas Walker passed on his death to them.
Some suggestion is made by counsel as to what became of the title to the said land on the death of A. J. Walker and John S. Walker respectively. A. J. Walker at the time of the death of Thomas and at his own death had living children. He was therefore at the time of his death the owner in fee of the one undivided half thereof, unless before that time he had conveyed the same to other parties,as in fact he had, and his grantees are therefore now the owners of the equal undivided half thereof. John S. Walker was the owner of the other equal undivided half, and as he was the survivor of said children and there was no provision in the will as to the passing of the property on the death of the survivor pf the children, we hold that he owned -his half thereof in fee, and that the same passed to his devisee.
Such being the holding of the court of common .pleas, as we understand, we see no error in the judgment, and it will be affirmed.
There is one suggestion,however, which we make in regard to the costs in these cases. It was practically an action to *416 construe this will, which must have been brought in some shape and in a manner that would probably have entailed more costs in the way of counsel fees, which would probably be payable from the estate. We think therefore ' the costs and expenses of the suits should be paid from the proceeds of the estate in litigation. We suggest this to counsel that there may be an agreement as to this. Of course, we might revise the judgment as to costs and affirm as to the residue, and then adjudge the costs in the error case as we thought right. But we prefer that counsel agree as to this.